**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JIJO YOHANNAN,<br><br>Plaintiff,<br><br>v.<br><br>COOK COUNTY HEALTH,<br><br>Defendant. | NO. 1:25-CV-00625<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Jijo Yohannan began working as a Nurse Coordinator for Cermak Health Services of Cook County (referred to in this Opinion as Cook County Health) in 2020. R. 68, First Am. Compl. ¶ 6; R. 86-1, Def.'s Mot. Exh. A, 04/10/2023 EEOC Charge.[1] In January 2021, while at the workplace, Yohannan suffered injuries to her head and shoulder. First Am. Compl. ¶ 8; R. 91, Pl.'s Resp. Exh. 1, Position Statement at 11.[2] She underwent rotator-cuff surgery and was unable to work for a period of time. First Am. Compl. ¶¶ 9–10; Position Statement at 11. After Yohannan returned to work, her supervisors allegedly retaliated against and harassed her, and she was placed on a performance improvement plan in July 2022. First Am. Compl. ¶¶ 12, 17–18, 21, 23–24; Position Statement at 12–14. Cook County Health terminated Yohannan's

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]Because the response brief and the two exhibits in R. 91 were all filed together as one docket entry, the page citations to the exhibits filed in R. 91 refer to the PDF page numbers on CM/ECF, rather than to any internal page number of the document.

employment in August 2023. First Am. Compl. ¶ 27; Position Statement at 14. So Yohannan sued Cook County Health, alleging that she suffered retaliation and termination based on her disability under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 *et seq.*[3] First Am. Compl. ¶¶ 33–57. Yohannan also brings a claim for retaliatory discharge under Illinois law. *Id.* ¶¶ 58–63. Cook County Health now moves for summary judgment on any claims arising out of a leg injury suffered by Yohannan, as well as her failure-to-accommodate claims under the ADA and IHRA. R. 86, Def.'s Mot. For the reasons explained below, Cook County Health's motion is granted.

## I. Background

In deciding Cook County Health's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must also give the benefit of reasonable inferences to the non-movant, Yohannan, as to the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). By the parties' agreement, the Court did not require Local Rule 56.1 statements to be filed. R. 85, 01/14/2026 Minute Entry. The recitation of the factual background represents the undisputed facts as alleged in the First Amended Complaint and the parties' briefing.

In February 2020, Yohannan began working as a Nurse Coordinator for Cook County Health, which provides health services to detainees in the Cook County

[3]This Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367.

Department of Corrections. First Am. Compl. ¶ 6; 04/10/2023 EEOC Charge; Position Statement at 11. In her role as a Nurse Coordinator, Yohannan directly supervised nurses and medical technicians who provided care to detainees. First Am. Compl. ¶ 6; 04/10/2023 EEOC Charge; Position Statement at 11. Yohannan's direct supervisor was Kina Montgomery, the Associate Director of Nursing–Correctional Health. First Am. Compl. ¶ 6; 04/10/2023 EEOC Charge; Position Statement at 11.

In January 2021, Yohannan suffered an injury at work when a latch fell and hit her on the head and shoulder. First Am. Compl. ¶ 8; Position Statement at 11. The injury to Yohannan's shoulder required right rotator-cuff surgery. First Am. Compl. ¶ 9; Position Statement at 11. Because of the injury, Yohannan could not immediately return to in-person work, and she worked remotely between November 2021 and May 2022. First Am. Compl. ¶ 10; Position Statement at 11. In May 2022, Yohannan returned to work with restrictions on lifting anything over five pounds, lifting repetitively, and lifting anything overhead. First Am. Compl. ¶ 15; Position Statement at 11–12.

Yohannan alleges that she suffered retaliation and harassment by her supervisors, Montgomery and Antoinette Williams, after she returned to work. First Am. Compl. ¶ 17; Position Statement at 12. Yohannan also alleges that Cook County Health failed to accommodate her disability, and instead subjected her to a difficult work environment by assigning her long night shifts, withholding support staff, and preventing her from using a pain-relieving machine prescribed by her doctor. First Am. Compl. ¶ 16. In July 2022, Yohannan complained to Cook County Health's Equal

Employment Opportunity department about the alleged harassment and retaliation from her supervisors. *Id.* ¶ 17; Position Statement at 12. That same month, she was placed on a performance improvement plan for allegedly having an unsatisfactory performance evaluation. First Am. Compl. ¶ 18; Position Statement at 13. Yohannan's performance was rated as unsatisfactory in the following categories: (1) effectiveness, (2) prompt completion of work, (3) thoroughness, (4) initiative, (5) timeliness, (6) professionalism, (7) communication skills, (8) judgment, (9) analytical ability, (10) ability to organize, (11) flexibility and adaptability, and (12) ability to work with others. Position Statement at 13. Yohannan's performance evaluation also noted that she had not performed her supervisory duties as expected. *Id.*

In October 2022, Yohannan injured her leg at work when she used her left hand to operate a dispensary door. First Am. Compl. ¶ 19; Position Statement at 12. She submitted a worker's compensation claim for the injury, but it was denied. Position Statement at 12. When she returned to work in February 2023, Yohannan had the same restrictions as she did after the shoulder injury. *Id.* In April 2023, while still employed at Cook County Health, Yohannan filed a formal charge with the Equal Employment Opportunity Commission (commonly known as the EEOC) alleging harassment, discrimination, and retaliation on the basis of a disability under the ADA. *See* 04/10/2023 EEOC Charge.

In June 2023, Yohannan submitted a second internal complaint about the harassment and retaliation that she was experiencing from her supervisors. First Am. Compl. ¶ 23; Position Statement at 12. In this second complaint, she claimed that her

supervisor berated her during a staff meeting on May 30, 2023. First Am. Compl. ¶ 23; Position Statement at 12. In July 2023, Yohannan received a disciplinary meeting notice for allegedly failing to investigate the facts of an incident that resulted in a patient's death in May 2023. First Am. Compl. ¶ 24; Position Statement at 14. Cook County Health then conducted a pre-disciplinary hearing on August 1, 2023, and concluded that Yohannan's conduct violated the personnel rules governing gross insubordination, negligent performance or willful misconduct in the performance duties, and conduct that an employee should reasonably know is prohibited. Position Statement at 14. On that same day, Cook County Health terminated Yohannan's employment. First Am. Compl. ¶ 27; Position Statement at 14.

In December 2023, Yohannan amended her EEOC charge to allege that harassment continued after she filed her first EEOC charge in April 2023. *See* R. 86-5, Def.'s Mot. Exh. E, 12/20/2023 EEOC Charge. In January 2025, Yohannan filed this lawsuit, bringing theories of liability about discrimination on the basis of her disability. *See generally* First Am. Compl. Cook County Health now moves for summary judgment on Yohannan's claims of discrimination arising from her leg injury, which happened in October 2022, on the ground that Yohannan failed to exhaust those claims. Def.'s Mot. at 4–6. On the same exhaustion ground, Cook County Health also moves for summary judgment on the claims for failure to accommodate.[4] *Id.* at 7–8.

---

[4]Cook County Health does not move for summary judgment on Yohannan's discrimination claims arising from her shoulder injury or on the retaliatory discharge claim.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 378. The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

### A. Leg Injury

"The ADA adopts the enforcement procedures governing Title VII actions, including the filing procedures and timing requirements." *Fairchild v. Forma Sci., Inc.*,

147 F.3d 567, 574 (7th Cir. 1998). "An ADA plaintiff must file a charge with the EEOC before bringing a court action against an employer." *Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014); *see also* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e–5(e)(1) and (f)(1)). Likewise, the IHRA requires exhaustion too. 775 ILCS 5/7A-102(A); *see also Garcia v. Village of Mount Prospect*, 360 F.3d 630, 640 (7th Cir. 2004) ("[T]he [IHRA] also limits the jurisdiction of Illinois courts, mandating that any party seeking to pursue a civil-rights claim in Illinois must first exhaust administrative remedies available under the Act (by filing a claim with the IHRC and proceeding with an IHRC investigation and adjudication), before appealing to an Illinois circuit court to hear the claim."). The exhaustion requirement "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employe[r] some warning of the conduct about which the employee is aggrieved." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (cleaned up).[5] But the EEOC charge does not need to allege "each and every fact that combines to form the basis of each claim in [the plaintiff's] complaint." *Id.*

Employees are "barred from raising a claim in the district court that had not been raised in [their] EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

charges actually raised." *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999); *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."). The Seventh Circuit has held that "in order for claims to be reasonably related to one another, there must be a factual relationship between them." *Whitaker*, 772 F.3d at 812 (cleaned up). In other words, "the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* at 812–13 (emphasis in original) (cleaned up).

Cook County Health argues that when evaluating exhaustion, federal courts should consider only the text set forth in the employee's EEOC charge. Def.'s Mot. at 4, 6. It is of course true that the Seventh Circuit has reviewed the text of EEOC charges in evaluating exhaustion. *See Rush*, 966 F.2d at 1110–11; *Green*, 197 F.3d at 898. But the Seventh Circuit has never explicitly held that courts are *limited* to the text of the EEOC charge for the exhaustion inquiry. Indeed, in *Rush*, the Seventh Circuit decided that the plaintiff's promotion-denial claim *was* properly exhausted because the claim was explicitly referenced in her three-page, handwritten "EEOC Affidavit," even though the claim was not set forth in the EEOC charge itself. *Rush*, 966 F.2d at 1110–11; *see also Bluford v. Swift Transp.*, 2012 WL 1755772, at *1, *3 (N.D. Ill. May 16, 2012) (for exhaustion analysis, considering the plaintiff's five-page letter attached to the EEOC charge describing the claims in greater detail "to the extent that [it] clarif[ies] or amplif[ies] the allegations made in the original

[c]omplaint") (cleaned up)). And in *Cheek*, the Seventh Circuit explicitly held that "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502. So the Court is not limited to the strict text of the EEOC charge when evaluating exhaustion. Having said that, as explained next, Yohannan did not present to the EEOC—whether in the written EEOC charge or outside of it—any claim for discrimination based on her leg injury.

As a starting point, Cook County Health argues that Yohannan's EEOC charges discuss only her *shoulder* injury, and thus she failed to exhaust any claims related to her October 2022 leg injury. Def.'s Mot. at 4–6. In her first EEOC charge, Yohannan alleged that she was subjected to harassment and discriminated against, but she did not specify any particular disability:

> I began my employment with Respondent on or about February 20, 2020. My current position is Nurse Coordinator/ Nurse Manager. During my employment, I was subjected to harassment. I complained to Respondent. Subsequently, I was placed on a Performance Improvement Plan on or about July 26, 2022.
>
> I believe that I have been discriminated against because of my disability and retaliated against for engaging in a protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

04/10/2023 EEOC Charge. In her second EEOC charge, Yohannan added claims based on her termination (by then, she had been fired), alleging that she had "filed a charge of discrimination with the EEOC on or about April 10, 2023 .... Subsequently, the harassment continued, and [she] was discharged on or about August 1, 2023."

12/20/2023 EEOC Charge. Otherwise, the second EEOC charge contains the same language as the first EEOC charge, and neither charge discusses the specific nature of her alleged disabilities. *See* 04/10/2023 EEOC Charge; 12/20/2023 EEOC Charge.

In contrast, the EEOC-intake interview notes do refer to a specific disability: the permanent injury to her right shoulder. In particular, the notes say that on January 6, 2021, Yohannan "permanently injured her right shoulder," R. 86-4, Def.'s Mot. Exh. D, EEOC Intake Interview Notes. The intake interview notes also conclude with observations on how Yohannan did not meet the performance improvement plan's requirements, was placed in another division, and is still being harassed. *Id.* There is no mention of a second injury or any discrimination or harassment based on that injury. *See id.* So there is no reason to think that claims based on the *leg* injury "can be expected to develop from an investigation into the charges actually raised." *Whitaker*, 772 F.3d at 813 (cleaned up). Yohannan's claims arising out of the leg injury are not reasonably related to her discrimination claims arising out of the shoulder injury. And as discussed earlier, for a claim in a lawsuit to be "like or reasonably related to" the claims in an EEOC charge, the complaint and the charge must, "at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 500–01 (emphasis in original) (cleaned up). "That the charge and complaint generally assert the same kind of discrimination is not sufficient without some factual relationship between them." *Dunn v. Cook County*, 816 F. Supp. 3d 858, 866 (N.D. Ill. 2026) (cleaned up). Indeed, the allegedly discriminatory conduct is not even of the same type: for the leg injury, Yohannan alleges that her workers' compensation claim was

denied, First Am. Compl. ¶ 20, whereas the shoulder-based claims are premised on threatened disciplinary proceedings, a difficult work environment, and the performance improvement plan, *id.* ¶¶ 12, 16, 18.[6]

Yohannan also argues that the position statement submitted by Cook County Health to the EEOC specifically discusses her leg injury, purportedly showing that the employer had fair warning about it. Pl.'s Resp. at 4. But the position statement's reference to the leg injury was in a factual-background section entitled, "Charging Party's Workplace Injuries and Accommodations." Position Statement at 11–12. The single paragraph on the leg injury merely described what led to the injury, the denial of the worker's compensation claim, and Yohannan's restrictions upon returning to work. *Id.* The leg injury is mentioned in no other section of the position statement, including the sections on the "Charging Party's Complaint(s)" and the entire "Legal Argument," all of which describes the actual complaints put at issue by the EEOC Charge. *See id.* at 12–18. So the position statement gives no rise to an inference that Cook County Health had fair warning of any discrimination claim based on Yohannan's leg injury.

Finally, Yohannan argues that Cook County Health had fair warning that the EEOC Charge included the leg injury because an EEO Specialist at Cook County Health wrote her a letter, in November 2022, acknowledging that she suffers from

[6]Yohannan successfully applied for workers' compensation after her shoulder injury in January 2021. First Am. Compl. ¶ 11.

two disabilities, including "a leg injury limiting her movement." Pl.'s Resp. at 4; R. 91, Pl.'s Resp. Exh. 2, 11/07/2022 Letter at 21. The letter communicated Cook County Health's decision to deny the requested accommodation to work from home. 11/07/2022 Letter at 22. All of that is true. But Yohannan does not assert that the letter was submitted to the EEOC. Without presenting the leg-injury claim to the EEOC, and with the focus on the shoulder injury and the alleged discrimination that happened before the leg injury, any claim based on the leg injury cannot "be reasonably expected to grow out of an EEOC investigation." *Bluford*, 2012 WL 1755772, at *3.

In sum, because Yohannan failed to exhaust her claims related to the October 2022 injury to her leg, Cook County Health is entitled to summary judgment in its favor as to those claims, including those brought under the IHRA. *See Garcia*, 360 F.3d at 640 ("The administrative process under the [IHRA] must be completed before a circuit court can exercise jurisdiction over these types of claims."); *Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 949–50 (N.D. Ill. 2015) (applying the EEOC exhaustion framework to plaintiff's IHRA claims). A dismissal based on lack of exhaustion is formally a without-prejudice dismissal, though it appears too late for Yohannan to properly exhaust the leg-injury claims at this point. So the dismissal is final for purposes of this case.

### B. Failure to Accommodate

Relying again on lack of exhaustion, Cook County Health also moves for summary judgment on the claims for failure to accommodate. Def.'s Mot. at 7–8; *see* First

Am. Compl. ¶ 16. Yohannan responds that those claims are reasonably related to the allegations in her EEOC charges, and that the claims would reasonably develop during the investigation into the charges. Pl.'s Resp. at 4–5; *see also* Compl. ¶ 16 (describing how Cook County Health "failed to accommodate" Yohannan and "subjected her to a difficult work environment"). For the reasons explained below, even when the evidence is viewed in Yohannan's favor, she failed to exhaust any accommodation claims.

As discussed earlier, Seventh Circuit precedent prevents an employee "from raising a claim in the district court that ha[s] not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green*, 197 F.3d at 898. "[A] failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA," and "the two types of claims are analyzed differently under the law." *Id.* In *Green*, the plaintiff, who was injured in a car accident that left her with certain disabilities, alleged that her employer failed to provide reasonable accommodations for those disabilities. *Id.* at 895, 898. Specifically, she alleged that the employer did not provide her with a suitable desk chair or lighting that was required by vision sensitivity. *Id.* But the Seventh Circuit held that the plaintiff "did not include any of these specific allegations in her EEOC complaint; in fact, she did not even allege … [the employer's] purported failure to accommodate with the EEOC." *Id.* at 898. Rather, the plaintiff's EEOC charge alleged "only that she was terminated because of her disability." *Id.* at 897. The Seventh Circuit

explained that "one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability," and "fail[ed] to understand how [the plaintiff] could expect that her claim that she suffered from inadequate working conditions would develop from the investigation of the reasons for her discharge" because her failure to accommodate claim "ha[d] nothing to do with her complaint that she was wrongfully terminated." *Id.* at 898.

Having said that, even though there is a *general* distinction between discrimination claims and accommodation claims, it is true (as Yohannan points out) that *Green* does not stand for the proposition that failure to accommodate claims can *never* be "reasonably related" to a disability discrimination claim stated in an EEOC charge. Pl.'s Resp. at 5; *see Love v. First Transit, Inc.*, 2017 WL 1022191, at *3 (N.D. Ill. Mar. 16, 2017) ("Several courts in this circuit have interpreted *Green* not to state a bright-line rule that failure to accommodate claims can *never* be 'reasonably related' to a disability discrimination claim stated in an EEOC charge." (emphasis in original)). Consistent with the overarching governing standard—whether an implicit claim would reasonably grow out of an explicitly brought claim—courts continue to ask "whether the conduct underlying the discrimination charge had something to do with the underlying accommodation claim." *Rivera v. Bd. of Educ. for Twp. High Sch. Dist. #214*, 2024 WL 4534932, at *4 (N.D. Ill. Oct. 21, 2024); *see also Morales v. Goodwill Indus. of Se. Wis., Inc.*, 2014 WL 4914255, at *4 (N.D. Ill. Sep. 30, 2014) (noting that in cases where courts have held that an accommodation claim was reasonably related

to a discrimination claim, "it was the defendant's alleged failure to accommodate that actually caused the plaintiff to be terminated").

For example, in *Morales*, a food-service worker suffered from hearing loss and regularly wore a hearing aid at work. 2014 WL 4914255, at *1–2. She "had a standing request with her employer that she not be assigned to the hot parts of the kitchen," because "sweating caused her device to malfunction." *Id.* at *1. Yet one day, the plaintiff was assigned to the hot-food station. *Id.* When she asked to be reassigned to the salad bar, her supervisors refused and told her that she had to either do the job "or go home." *Id.* at *2. The plaintiff was unwilling to work at the hot-food station, so she was fired. *Id.* Even though the plaintiff "all but concede[d]" that she did not include an accommodation claim in her EEOC charge, the district court agreed that the claim was "reasonably related to the allegations of the EEOC charge (discriminatory discharge)" because it was not "unreasonable to think an investigation into [the] plaintiff's termination would grow into an investigation into defendant's failure to accommodate." *Id.* at *3–4; *see also Ortiz v. Bd. of Educ. of City of Chi.*, 2013 WL 3353918, at *1, *5 (N.D. Ill. July 2, 2013) (holding that it was not unreasonable to believe that an investigation into plaintiff's termination for bringing alcohol to his workplace "would grow into an investigation of the alleged failure to provide a reasonable accommodation"); *Wamack v. Windsor Park Manor*, 836 F. Supp. 2d 793, 798 (N.D. Ill. 2011) (holding that the plaintiff's termination "was, in effect, a refusal to provide [him] with the accommodation he sought"); *Davis v. Am. Drug Stores, Inc.*, 2003 WL 21149063, at *3 (N.D. Ill. May 19, 2003) ("[T]he decision to discharge plaintiff was, in

effect, a refusal to provide her the accommodation …. Because plaintiff's accommodation claim is the mirror image of her discharge claim, it is viable even though she did not include it in her EEOC charge.").

So it is possible for an accommodation claim to be reasonably related to a discrimination claim. Here, however, the record evidence (even when viewed in Yohannan's favor) does not connect the discrimination claims to the alleged failure to accommodate. Remember that, in the First Amended Complaint, Yohannan alleges that Cook County Health subjected her to long night shifts, failed to provide her with adequate support staff, and refused to let her use a medically prescribed pain-relieving machine. First. Am. Compl. ¶ 16. She also has proffered that Cook County Health refused to allow her to work from home as an accommodation. *See* Pl.'s Resp. at 6. But these accommodation requests are not connected with, and would not reasonably grow out of, the claims in the EEOC charges. Yohannan alleges in those charges that she was placed on a performance improvement plan, and eventually terminated, after she complained about harassment. *See* 04/10/2023 EEOC Charge; 12/20/2023 EEOC Charge. But there is nothing in Yohannan's performance improvement plan that is related to long night shifts, giving her support staff, and usage of her medically prescribed pain-relieving machine. Instead, the plan contained goals such as "work[ing] with … colleagues and [the] staffing coordinator to ensure adequate staffing," completing a certain number of forms per day, collaborating with other departments to resolve deficiencies, "[a]ccept[ing] job responsibility and perform[ing] job duties to [Yohannan's] highest ability without push back," and demonstrating "[j]ob knowledge

such as onboarding employees and problem solving." Position Statement at 13–14. What's more, Cook County Health's EEOC position statement says nothing about long night shifts, inadequate support staff, and inability to use a pain-relieving machine. *See generally id.* Indeed, an accommodation is discussed a single time: again in the background section on "Charging Party's Workplace Injuries and Accommodations." *Id.* at 11. There, Cook County Health mentions that Yohannan was provided remote work as an accommodation between November 2021 and May 2022. *Id.* And when Yohannan returned to work in May 2022, she did so with restrictions on lifting. *Id.* at 11–12. The remainder of the position statement does not respond to the EEOC charge as if there were an accommodation claim embedded in it.

Finally, unlike in *Morales*, *Ortiz*, *Wamack*, and *Davis*, Yohannan's discharge was not, in effect, an alleged refusal by Cook County Health to provide her with accommodations. Leading up to the termination, in May 2023, Cook County Health issued Yohannan a disciplinary-meeting notice for allegedly failing to properly investigate an incident that resulted in the death of a patient. Position Statement at 14; First Am. Compl. ¶ 24. The meeting took place on August 1, 2023, and Yohannan was terminated for allegedly violating personnel rules that same day. Position Statement at 14; First Am. Compl. ¶ 27. Unlike in the cited cases, there is no record evidence (even when viewed in Yohannan's favor) that an EEOC investigation into the termination would grow into an investigation of the alleged failure to provide accommodations. So Yohannan has failed to administratively exhaust those claims. Summary judgment is entered against her on the ADA and IHRA accommodations claims.

### C. Leave to Amend

Yohannan requests leave to amend the complaint again if the Court holds that she failed to exhaust the discrimination claims arising from the leg injury and failed to exhaust the accommodation claims. Pl.'s Resp. at 6. It is of course true that "leave to amend a complaint 'shall be freely given when justice so requires.'" *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773 (7th Cir. 1995) (quoting Fed. R. Civ. P. 15(a)(2)). "In the absence of any apparent or declared reason—such as undue delay, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given." *Id.* (cleaned up).

But the procedural posture on the exhaustion issue is the *summary judgment* stage. The Court flagged that the exhaustion issue might require discovery and then would be the subject of a summary judgment motion and required conferral over discovery. R. 67. Yohannan then sought records from the EEOC, R. 73, and the Court then monitored the disclosure of responsive records, R. 76. Indeed, the Court ended up ordering the EEOC to produce the records. R. 81. This led to the schedule setting the briefing on the partial summary judgment motion, and the requirement that the parties cite to the evidentiary record. R. 85. With this procedural posture in mind, it is important to note that, despite Civil Rule 15(a)(2)'s expansive leeway to amend pleadings, the Seventh Circuit has held "that a plaintiff's leave to amend, when filed after discovery has been closed and after a defendant's motion for summary judgment has been filed, is considered unduly delayed and prejudicial." *Sanders*, 56 F.3d at 774.

This is especially true "where a plaintiff has provided no explanation as to why amendment did not take place sooner." *Id.* at 775. Courts may also consider the burden that granting a motion for leave to amend would place on the judicial system. *See Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988) ("[T]he burden to the judicial system from allowing parties to change theories in midstream is a pertinent factor and may in appropriate cases justify a refusal to allow an amendment even if the amendment would cause no hardship at all to the opposing party."). Here, Yohannan had the opportunity to engage in discovery on exhaustion and to fully litigate the exhaustion defense. The entry of partial summary judgment based on lack of exhaustion of certain claims is *not* based on a *pleading* defect. Instead, the Court put the litigation on the exhaustion defense—which is, after all, an affirmative defense—onto the discovery and summary-judgment-briefing track. There is no basis to amend the complaint to avoid lack of exhaustion, because the pleading itself was not at issue. So Yohannan's request to amend the complaint is denied.

## IV. Conclusion

Cook County Health's partial motion for summary judgment, R. 86, is granted: The discrimination claim based on the leg injury and the accommodation claims are

dismissed for lack of exhaustion. Yohannan's retaliation and discrimination claims under the ADA and IHRA premised on the shoulder injury remain intact, as well as the retaliatory discharge claim under Illinois law.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 21, 2026